480 So.2d 688 (1985)
Bertley S. PILGRIM, Appellant,
v.
STATE of Florida, Appellee.
No. 84-891.
District Court of Appeal of Florida, Fifth District.
December 26, 1985.
*689 James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and W. Brian Bayley, Asst. Atty. Gen., Daytona Beach, for appellee.
THOMPSON, E.R., Associate Judge.
Appellant appeals his conviction of two counts of armed robbery, in two separate cases, and resulting sentences of two consecutive terms of imprisonment. Specifically, appellant contends that the denial of his motion to suppress a preindictment line-up held without benefit of counsel, his sentence in aggravation of the sentencing guidelines and the length of his sentence, were in error.
Appellant, a fifteen-year-old black male, was arrested on November 28, 1983, for two counts of armed robbery. These were two separate and distinct crimes occurring on separate dates. At the time of his arrest, appellant gave his age as eighteen. Later, it was determined that he was only fifteen.
Appellant was tried on February 21, 1984, before Judge Perry, and was found guilty of robbery with a weapon. On March 26, 1984, appellant was tried before Judge Eastmoore for robbery with a firearm and found guilty as charged. Sentencing was held on May 17, 1984, by Judge Eastmoore and Judge Perry. One guideline sentencing score sheet was used with robbery with a firearm as the "primary offense" and robbery with a weapon as an "additional offense at conviction." Appellant's score included three prior misdemeanors, which placed him in the four-and-a-half to five-and-a-half years' sentencing cell.
Judge Eastmoore sentenced appellant to thirty years in the Department of Corrections and gave written reasons for departure. Immediately after appellant's sentencing hearing before Judge Eastmoore, Judge Perry also sentenced appellant to thirty years in the Department of Corrections. This sentence was to run consecutive to the sentence imposed by Judge Eastmoore. No written reasons for departure were given by Judge Perry. Appellant raises three issueson appeal.
I. WHETHER THE TRIAL COURT ERRED IN EACH CASE BY DENYING THE APPELLANT'S MOTION TO SUPPRESS LINE-UP IDENTIFICATION.
II. WHETHER THE TRIAL COURT ERRED IN DEPARTING FROM THE GUIDELINES AND SENTENCING APPELLANT TO SERVE SIXTY (60) YEARS IN PRISON.
III. WHETHER ASSUMING SOME DEPARTURE FROM THE GUIDELINES MAY BE JUSTIFIED, THE COURT NEVERTHELESS ERRED BY THE EXTENT OF ITS DEPARTURE.
As to the first issue, there is no dispute that appellant was advised by Detective Jenkins of his constitutional right to an attorney and the right to have an attorney present during the line-up. This was witnessed by Deputy Brown. Appellant orally waived his rights and participated in the line-up. Before participating in the line-up, appellant was provided with a written waiver form by Detective Jenkins. Because appellant could not read well, Detective Jenkins read the form to him and filled in the correct date, time and place. Detective Jenkins also added "my rights were read to me by Detective Jenkins because I do not read well."
The appellant arranged the positions of persons participating in the line-up and excluded one person from the line-up. The line-up consisted of black males of similar *690 characteristics. There were eight black males of approximately the same height, weight and clothing. A photograph was taken to memorialize the participants in the line-up. All of this was done at the direction of Captain Miller of the Putnam County Sheriff's Office. The appellant waived his rights orally to Captain Miller. This was witnessed by Deputy Grayer. The appellant was positively identified by the two women victims as the person who committed the armed robberies.
The evidence is clear that appellant was given his constitutional rights on several occasions by different deputies and detectives. His rights were given orally and he waived them orally and in writing. He appeared to be intelligent and able to understand his rights. He was not coerced, threatened or intimidated. He waived his rights freely and voluntarily. There was ample proof for the trial court to determine that the appellant's rights were properly given and freely and voluntarily waived. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Further, appellant excluded from the line-up a person he felt was inappropriate. Appellant arranged the participants in the way he liked and stood where he felt comfortable. In all regards, the preindictment line-up was proper. See U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Additionally, there was sufficient testimony presented by the state to show the basis for an independent identification. Each witness testified that she had several minutes to observe appellant without obstructions or impediment to her vision. In each case, appellant was five to six feet from the witness. Each observed his clothing, weight, race, sex and general physical characteristics. The state presented "clear and convincing reasons that the in-court identification was based upon observations of the suspect other than the line-up identification." See Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
The remaining two issues raised by appellant can be disposed of together. Since appellant appealed his sentence, the Supreme Court of Florida has decided State v. Jackson, 478 So.2d 1054, (Fla. 1985), and Hendrix v. State, 475 So.2d 1218 (Fla. 1985). These cases are dispositive of the remaining issues.
In Judge Eastmoore's written order, he detailed the reasons for his sentence outside of the sentencing guidelines. In part, he wrote:
This Defendant from the time he was old enough to get up and get out of the house has demonstrated beyond doubt that he is a career thief and a career criminal. He has shown by his actions that he is inherently dangerous to society and, unless put away from society for a sufficient period of time, will continue in his pattern of criminal conduct and will, in fact, do violence including remorseless killing. This Defendant has shown no remorse for his offenses.
Conviction of a firearms offense aggravates the situation in the mind of the public, and it is inconceivable to this Court that a sentence within the guidelines would be sufficient punishment in this instance and, therefore, this Court finds and determines that it is necessary to go outside the guidelines and impose a sentence accordingly.
None of the reasons provided in Judge Eastmoore's order is clear and convincing. The sentencing court may not consider a defendant's prior criminal convictions if they were used in the sentencing score sheet. Hendrix, supra at 1220.[1] Neither may the court consider a defendant's *691 lack of remorse as a reason to sentence outside the guidelines. See Hunt v. State, 468 So.2d 1100 (Fla. 1st DCA 1985); Hubler v. State, 458 So.2d 350 (Fla. 1st DCA 1984).
Judge Perry's departure was also improper. The Florida Supreme Court has recently held that all reasons for deviating from the sentencing guidelines must be in writing. State v. Jackson, supra. Judge Perry did not provide this court with any written reasons.
For the foregoing reasons, we affirm the judgments but vacate the sentences and remand for resentencing consistent with the sentencing guidelines, unless a valid reason for departure is stated in writing.
JUDGMENTS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
SHARP, J., concurs.
DAUKSCH, J., concurs specially with opinion.
DAUKSCH, Judge, concurring specially:
I concur with the majority opinion but write to add my thoughts regarding the sentences. I think the sixty year prison term imposed on this fifteen year-old boy is excessive. The record does not support such a sentence and I seriously doubt another record, if this case returns, will support it. Few murderers are serving that length of time. In fact, if the present sentencing guideline program continues this boy will serve approximately thirty years before he is released. This is more than a convict who does not get the chair serves for first degree murder. The sentences of the past are gone. All judges should recognize this and adjust their sentencing procedures appropriately.
NOTES
[1] See also In Re Rules of Criminal Procedure (Sentencing Guidelines), 439 So.2d 848 (Fla. 1983), which reads:

The purpose of sentencing guidelines is to establish a uniform set of standards to guide the sentencing judge in the sentence decision-making process... . Sentencing guidelines are intended to eliminate unwarranted variation in the sentencing process by reducing the subjectivity in interpreting specific offense and offender-related criteria and in defining their relative importance in the sentencing decision.
Id. at 849.